OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 90-103 |
| of | : | |
| | : | MAY 10, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE JAMES P. BOTZ, COUNTY COUNSEL, SONOMA COUNTY, has requested an opinion on the following question:

Does the Equal Protection Clause principle of "one person, one vote" apply to the members of a local transportation authority appointed pursuant to section 180051 of the Public Utilities Code, a provision of the Local Transportation Authority and Improvement Act?

CONCLUSION

The constitutional "one person, one vote" requirement for elective governmental bodies does not apply to membership of a local transportation authority created pursuant to the Local Transportation Authority and Improvement Act.

ANALYSIS

The Local Transportation Authority and Improvement Act is found in section 180000 et seq. of the Public Utilities Code.[1]  Such an authority is authorized to enact a retail and use tax ordinance, with voter approval, to finance a "county transportation expenditure plan."  Such a plan may include "the construction and improvement of state highways [in the county], the construction, maintenance, improvement, and operation of local streets, roads and highways, and the construction, improvement, and operation of public transit systems."  (See §§ 180200-180206.)

Section 180051 provides for the appointment of and membership of an authority.  It states:

"A board of supervisors choosing to create an entirely new entity as an authority, shall determine the membership of the authority with the concurrence of a majority of the cities having a majority of the population in the incorporated area

---

[1]All section references are to that code unless otherwise indicated.

of the county.  Each member of the authority shall be an elected official of a local governmental entity within or partly within the county.  Members of the board of supervisors serving on an authority shall comprise less than a majority thereof."

We are asked whether the "one person, one vote" principle of the Equal Protection Clause of the United States Constitution applies to the membership of such a local transportation authority appointed by the board of supervisors.  That principle, first enunciated in the "reapportionment cases" (see e.g. *Baker* v. *Carr* (1962) 369 U.S. 186, *Wesberry* v. *Sanders* (1964) 376 U.S. 1 and *Reynolds* v. *Sims* (1964) 377 U.S. 533) "`means that as nearly as practical one man's vote. . . is to be worth as much as another's.'"  (See *Reynolds* v. *Sims*, *supra*, 377. U.S. at p. 559.)  Accordingly, ". . . the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."  (*Id*, at p. 555.)

We conclude that the "one person, one vote" principle in not applicable to a local transportation authority since its members are not elected by the people, either directly or indirectly.  The authority is, in our view, solely an appointive body.

Since the inception of the "one person, one vote principle" in the reapportionment cases, the principle has been extended to elective local governmental bodies which perform important governmental functions.  Accordingly, in *Hadley* v. *Junior College District* (1970) 397 U.S. 50, the United States Supreme Court applied the principle to a local junior college district wherein the trustees were chosen by the electorate by trustee areas.  Thus the court stated:

". . . We therefore hold today that as a general rule, whenever a state or local government decides to select persons by a popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as practicable, that equal number of voters can vote for proportionately equal number of officials. . . ." (*Id*., at p. 56.)

See also *Avery* v. *Midland County* (1967) 390 U.S. 474): "one person, one vote" principle applicable to Texas five member County Commissioners Court where four of the members were elected by district.

The Court in *Hadley* also noted however as follows:

". . . We have also held that where a state chooses to select members of an official body by appointment rather than election, and that choice does not offend [other provisions of] the Constitution,[2] the fact that each official does not

---

[2]As noted by the California Supreme Court in *People* Ex Rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 505, fn. 26, with respect to this statement of the United States Supreme Court:

"Under certain circumstances, not here present . . ., the use of an appointive rather than an elective process may offend constitutional protections other than 'one person, one vote.'"

In that case the California Supreme Court, following *Sailors*, held that the "one person, one vote" principle did not apply to the Tahoe Regional Planning Agency since it was an appointive rather

`represent' the same number of people does not deny those people equal protection of the laws. *Sailors* v. *Board of Education*, 387 U.S. 105 (1967). . . ." (397 U.S. at p. 58, emphasis added).

With respect to local <u>appointive</u> boards and commissions, *Sailors* v. *Board of Education* (1967) 387 U.S. 105 is instructive. In that case a county school board was not chosen by the electorate but by delegates from local school boards. Each local elective school board sent a delegation to a biennial meeting at which those delegates elected a five county school board. Those selected were not required to be members of local boards, but were, however, elected by the delegates from candidates who were nominated by school electors.

The court concluded that the "one person, one vote" principle was not violated under this procedure. The court stated:

"We find no constitutional reason why state or local officers of the nonlegislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election. . . ." (*Id*., at p. 108.)[3]

"The Michigan system for selecting members of the county school board is basically appointive rather than elective.[6/]" (*Id*. at p. 109).

For our purposes herein, the reasoning in footnote 6 in *Sailors* is extremely significant. In that footnote the Court, after repeating the method of appointing the board of education in *Sailors* and its delegate procedure, observed as follows:

". . . [T]he delegates need not cast their votes in accord with the expressed preferences of the school electors. There is no formal method by which a delegate can determine the preferences of the people in his district. <u>It is evident, therefore, that the membership of the county board is not determined, directly or indirectly, through an election in which the residents of the county participate. The `electorate' under the Michigan system is composed not of the people of the county, but the delegates from the local school boards</u>." (Emphasis added.)

With this background as to the elective/appointive dichotomy which has been the basis of the decisions of the United States Supreme Court in the "one person, one vote" cases, we return to the governmental body at issue herein, a local transportation authority. Under the terms of section 180051, the "board of supervisors . . . shall determine the membership of the authority with the concurrence of the cities having a majority of the population in the incorporated area of the county. Each member shall be an elected official of a local governmental entity within or partly within the county . . ."

---

than an elective body.

[3]The distinction the Court drew between legislative bodies and nonlegislative bodies, or administrative bodies, in *Sailors* was later rejected in *Hadley*. However, the basic holding that appointive bodies do not fall within the "one person, one vote" principle is still viable since the court in *Hadley* cited *Sailors* with approval on that point. See also *People* Ex Rel. *Younger* v. *County of El Dorado*, *supra*, 5 Cal.3d 480, 504 pointing out the continuing viability of the basic holding of *Sailors* re appointive bodies after the decision in *Hadley*.

Accordingly, although the members must be "elected officials," the electorate does not vote for the members as such. At the very most the electorate selects the potential pool of candidates. The members are then actually selected, i.e., appointed, by the joint action of the board of supervisors and the cities having a majority of the population of the incorporated area. As was the case in *Sailors*, there isn't even any method for the electorate to express a preference. Thus, the members of the authority are not elected by the people either directly or indirectly. They are basically an appointive board. As such, the "one person, one vote" principle would not be applicable.

It has been suggested, however, that the recent case, *Board of Estimate of City of New York* v. *Morris* (1989) _ U.S. _, 109 S.Ct. 1433, when applied to a county transportation authority, would operate so as to make the county transportation authority essentially an "elective board."

In that case the United States Supreme Court explained the composition of the Board of Estimate as follows, and then explained briefly why the "one person, one vote" <u>was</u> applicable to that board:

> "The Board of Estimate of the City of New York consists of three members elected citywide, plus the elected presidents of each of the city's five boroughs. Because the boroughs have widely disparate populations--yet each has equal representation on the board--the Court of Appeals for the Second Circuit held that this structure is inconsistent with the Equal Protection Clause of the Fourteenth Amendment. We affirm." (109 S.Ct. at p. 1437.)

> "That the members of New York City's Board of Estimate trigger this constitutional safeguard is certain. <u>All eight officials become members as a matter of law upon their various elections.</u> New York City Charter § 61 (1986). The Mayor, the Comptroller, and the President of the City Council, who comprise the board's citywide number, are elected by votes of the entire city electorate. Each of these three cast two votes, except that the Mayor has no vote on the acceptance or modification of his budget proposal. Similarly, when residents of the city's five boroughs--the Bronx, Brooklyn, Manhattan, Queens, and Richmond (Staten Island)-- elect their respective borough presidents, the elections decide each borough's representative on the board. These five members each have single votes on all board matters." (109 S.Ct. at p. 1438, emphasis added.)

Accordingly, all eight members of the Board of Estimate are elected to city or borough offices. Election to those offices, ipso facto, also constitutes election to the Board of Estimate. Stated otherwise, the Mayor, Comptroller, President of the City Council and the five borough presidents are, "ex-officio," the Board of Estimate.

This was explained by the Court of Appeals in greater detail. Thus in *Morris* v. *Board of Estimate* (2d Cir. 1983) 707 F.2d 686, the court explained why the board was not appointive:

> "Unlike the county school board members in *Sailors*, the members of the Board of Estimate are directly elected by the voters. Upon election to these respective positions, they automatically become Board members as a matter of law. . . .

> ". . . . . . . . . . . . . . . . . . . . . . . . . . .

90-103

"It follows that the Board of Estimate is not an appointive body; its membership is definitely determined by election and by election alone.

"Moreover, the question of the applicability of the Equal Protection Clause to `ex officio' boards was settled in this circuit in *Bianchii* v. *Griffing*, 393 F.2d 457 (2d Cir. 1968) . . . a citizen entering the voting booth in New York City `chooses at one and the same time' his Borough President and his Board of Estimate Member. . . .

"Accordingly, we conclude that the Board of Estimate is selected by popular election." (*Id.*, at p. 689.)

In our opinion, this New York case has no applicability to a local county transportation authority. The local transportation authority members do not serve "ex-officio" when elected to another city or county office. Their selection as authority members is not "determined by election and by election alone," using the words of the *Morris* case, nor are they "selected by popular election." Their situation is more analogous to the county board of education in *Sailors* which was held to be an appointive body. As already noted, the most that can be said of them as elected officials is that the electorate by electing them to other city or county offices, merely determined the pool from which they could be appointed. This is similar to the situation in *Sailors* where the electorate nominated candidates for the county board of education. And in both *Sailors* and in the question presented, there was and is no way for the electorate to even express a preference as to who should be appointed to the authority. Accordingly, in the words of the Court in footnote 6 in *Sailors*, quoted *ante*, with modification for our local transportation authority:

"It is evident, therefore, that the membership of the . . . [local county transportation authority] is not determined, directly or indirectly, through an election in which the residents of the county participate. The `electorate' under the . . . [California] system is composed not of the people of the county, but the . . . [board of supervisors with the concurrence of the cities having a majority of the population.]"

We therefore conclude that the Equal Protection Clause principle of "one person, one vote" is not applicable to the members of a local transportation authority appointed pursuant to section 180051 of the Public Utilities Code.

\* \* \* \*